BENJAMIN WHITE WARREN
12555 Andrew Lane
Molt, MT 59057
Email: bwarren@dmcre.com
Tel: +1858-442-3866

Pro Se Plaintiff

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MONTANA YELLOWSTONE COUNTY**

| | |
|---|---|
| BENJAMIN WARREN, an individual, | ) VERIFIED COMPLAINT |
| | ) |
| Plaintiff, | ) |
| | ) No. |
| v. | ) |
| | ) |
| ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, | ) |
| | ) |
| | ) DEMAND FOR JURY |
| Defendant. | ) TRIAL |

## COMPLAINT

NOW COMES the Plaintiff, BENJAMIN WARREN ("Mr. WARREN"), acting pro se, individually and for causes of action against the defendant hereby complains about the Defendant, ALLSTATE INSURANCE COMPANY, and demanding trial, upon personal information as to its own activities and upon information and belief as to the activities of others and all other matters, and state as follows:

## I.    GENERAL ALLEGATIONS

1. The plaintiff brings this action for bad faith insurance claim, unjust enrichment, breach of the Montana Code, Title 33 – Insurance and Insurance Companies, to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the payment of pending claim, disgorgement of ill-gotten monies, and other equitable relief for Defendant's acts or practices in violation of Montana Insurance codes and applicable policies.

2. Plaintiff is entitled to compensatory and punitive damages for his losses, suffering, and infliction of emotional distress, resulting from the defendant's fraudulent and bad faith dealings, negligence, dishonest conducts, strict liability, and breaches of the implied duty of care.

**PARTIES**

3. Plaintiff Benjamin White Warren is an individual residing in Yellowstone County, Montana. All the transactions leading to the filing of this suit occurred where the plaintiff resides.

4. Defendant Allstate Insurance Company is an insurance underwriter that carries the business of insuring among others motor vehicles for its clients across the United States. The plaintiff has reasons to believe that it is founded and

established in Texas, United States. It carries out businesses all over the United States including in Montana.

5. Plaintiff does not know the true names and capacities, whether corporate, partnership, associate, individual or otherwise of Defendant sued herein. Plaintiff will seek leave to amend this Complaint to set forth the true names and capacities of the fictitiously named Defendant (if any) together with appropriate charging allegations when ascertained.

6. All acts of corporate employees as alleged were authorized or ratified by an officer, director or managing agent of the corporate employers.

7. The plaintiff is informed and believes that the defendant was the agent or employee of each other, at all material times relevant herein acted within the scope of employee and agent.

8. The employees of the defendant and their agents acted in breach of their duty and did nothing to ensure that the defects in the information that was relayed to the plaintiff remained accurate.

## JURISDICTION AND VENUE

9. This is an action for bad faith insurance, damages for infliction of emotional distress and breach of contract, with actual amount to be determined at the trial

hereon, exclusive of court costs, attorney's fees, and interest, and therefore within the jurisdiction of this Court.

10. Plaintiff Benjamin White Warren is an individual residing in Montana.

11. All acts of corporate employees as alleged were authorized or ratified by an officer, director or managing agent of the corporate employer.

12. This Court has subject matter jurisdiction over these parties for the claims asserted herein, due to the causes of action arising within the jurisdiction of this court and therefore venue and jurisdiction are proper.

13. This Court has personal jurisdiction over Defendant because: (a) Defendant is operating, present, and/or doing business in in several states in the United States, including Montana and (b) Defendant's breaches have occurred in Montana.

## FACTS

14. The plaintiff avers that he was one of the insured clients to the defendant, holding a comprehensive policy number Policy #: 807508820 for his motor vehicle make Ford Focus (hereinafter the "Motor Vehicle").

15. The plaintiff avers that he has been making payment to the premiums when due and at no time had he defaulted in any of his obligations as an insured.

16. All was well until the November 11th 2021 when the plaintiff got involved in an accident. The plaintiff avers that he accidentally struck a deer with his motor vehicle whereupon the vehicle became partially damaged.

17. The plaintiff avers that no one else was involved in the accident (it was a self-involving accident).

18. That on November 12th 2021, the plaintiff did file the claim with his then insurer, Allstate Insurance Company (the defendant).

19. The plaintiff avers that his claim was recorded as claim number #: 0648813979 and a copy of the said form is herewith filed and incorporated by reference as Exhibit A.

20. The plaintiff avers that the morning of 11/12/21, when he did file the claim, he indeed did a video-chat walk around the motor Vehicle with the claims adjuster Sean Melis, who is an employee at Allstate.

21. That at the end of our video chat, the Claims adjuster intimated he was going to assemble a repair estimate and get back to the Plaintiff.   No further communication took place until the Monday the 15th of November, 2021.

22. The plaintiff avers that on Monday, November 15, 2021 when he spoke with the defendant's representative, Sean Melis, the individual assigned to his claim, it

came as a shock that the  claim had been assigned a paltry $8000 as the motor

vehicle's total loss.

23. The plaintiff avers that he was awarded $8000 price if he kept the motor vehicle,

and $9000 price if he gave the motor vehicle to Allstate.

24. The plaintiff avers that he declined the defendant's undervalued assessment and

offer and the assertion that the motor vehicle is a total loss.

25. Another attorney advised the plaintiff to write a demand letter highlighting his

demands which the plaintiff did.

26. The plaintiff did outline what he would consider as satisfactory to complete the

claim.  The defendant responded back threatening to 'bookshelf' my claim if I

didn't respond back in a set period of time.

27. In January 2022, finally, the plaintiff avers that he had to hire attorney in Red

Lodge that intimated he was willing to negotiate with Allstate regarding the

pending claim. Nothing became of these negotiations.

28. That afterwards, the defendant started taking the plaintiff round and round with a

series of endless negotiations and conversations between him and Sean Melis,

which negotiations never bore any fruit. The defendant maintained their

undervalued figure as the what they were going to pay for the claim.

29. When it became clear no progress would be made, the plaintiff avers that he began searching for an attorney to negotiate on his behalf. Subsequently, one of the attorneys he retained advised that he proceeds and report Allstate (the defendant) to the Montana Insurance Commissioner. This did not yield any results that would end the hard stance in the insurance claim as the vehicle did not qualify for a total loss.

30. The plaintiff avers that it is indeed a fact that, one of Allstate's senior executives admitted in writing that the motor vehicle did not qualify under Allstate's policies, as a total loss. This was at their absurd $8000-$9000 numbers cited earlier. (See the annexed exhibit of the said admission).

31. The defendant maintained its stances and it became apparent that all it was able to offer was a figure that is below what the claim is worth.

32. With continued negotiations, the plaintiff did complete the appraisal part of the claim settlement process.

33. The plaintiff avers that he spoke with Sean Melis regarding the appraisal and informed him of his selected appraiser.

34. That the plaintiff, Allstate, and the plaintiff's Appraiser in the end did agree to a figure of $12,750. Following this agreement in value, the plaintiff avers that Sean Melis promised to revert on a meeting to agree whether the vehicle will be

repaired, or totaled and monies paid to the plaintiff.  No communication ever came from the defendant regarding their decision or a call for agreement on the best way forward.

35. A week after the agreed value on a Thursday, the plaintiff received a call from Allstate.  At the time, he was driving so he wasn't able to answer the call.  They (Allstate) however didn't leave a message.  The day after Allstate called, a tow truck and driver showed up unexpectedly in the plaintiff's driveway.

36. The plaintiff avers that he explained to the tow truck driver (who claimed to be coming on behalf of Copart and Allstate) that he was not going to release the vehicle to them, and the driver left.

37. For the next few days, the plaintiff avers that he continued to get phone calls from Copart asking if he was ready for them to pickup the car.  The plaintiff did communicate to Copart that the car was not for sale. After some back and fourth with Copart, they understood the plaintiff was  not going to sell the car and stopped calling, and everything went mute.

38. The following week, the plaintiff called Sean Melis at Allstate and recorded the call with him (He was informed that the call is being recorded).  He claimed to not "be able to talk to the plaintiff because the Red Lodge attorney never told Allstate in writing they were no longer representing the plaintiff." However, Sean Melis continued to state that the vehicle was a total loss, a position which wasn't

true and a strategy that appeared aimed at defeating the plaintiff's claim. We were clearly back to where we started at the onset of this claim.

39. The plaintiff avers that to date, the motor vehicle is still in its damaged state and the defendant has failed to timeously pay fully the amounts that are due under the insurance policy.

40. That on or about April 19th 2023, the plaintiff did receive a cheque of $10,810.46 which cheque is not a reflection of the assessed figure of $12750. The amount was lower than what had been agreed as the damage and assessed value. The plaintiff had also incurred expenses retaining attorneys to pursue this claim, has been running losses for the period that the car has not been in use and the plaintiff will continue to incur expenses in prosecuting this claim.

41. The Plaintiff avers that this is a case of insurance bad faith for reasons that:

    a. Through its conducts, the defendant has failed to fully settle a valid insurance claim.

    b. The defendant has denied the claim without furnishing a valid reason

    c. The defendant has offered and continued to offer money that is less than what the claim is worth (see the cheque of $10,810.46 instead of the $12750 as assessed).

    d.  Issuance of threats to the plaintiff, at one time threatening to bookshelf the plaintiff's demands if he failed to accept their offer.

### FIRST CLAIM FOR RELIEF

### Fraudulent Misrepresentations

### Of Material Facts .

42. Plaintiff re-alleges and incorporates by reference the allegations contained in the entirety of this Complaint as if fully set forth herein.

43. In numerous instances, in connection with the assessment of the motor vehicle, the defendant, expressly or by implication, that the motor vehicle was a total loss, a position that they knew was false and inconsistent with insurance policies. At all material times, the motor vehicle was not a total loss as they tried to pay lower sums of $8000-9000 and later $12750. The continued shifting of goal posts by the defendant is tantamount to fraudulent misrepresentation.

44. Allstate has since submitted the forms for "owner retained salvage loss" vehicles to the state in a move that is aimed to fraudulently in salvage the vehicle. This is not the true position of the said vehicle as it is not a total loss.

45. In truth and in fact, the defendant and its representatives knew that the motor vehicle could be repaired to its state and that it would be cheaper repairing than totaling/salvaging the vehicle.

46. The plaintiff avers that the defendant did supply false information regarding the true value of the motor vehicle's assessment. They intentionally and fraudulently assessed the vehicle at $8000 when the true value was $12750.

47. The defendant's statements, are false and misleading and constitutes a deceptive act or practice in violation of the good practice policy that is required of the defendant as an insurance service provider.

## SECOND CLAIM FOR RELIEF

### Negligent Infliction of Emotional Distress

48. Plaintiff re-alleges and incorporates by reference the allegations contained in the entirety of this Complaint as if fully set forth herein.

49. The Defendant by act negligently inflicted emotional distress upon Plaintiff, especially when their agents decided to relay false information to the plaintiff. The said conduct was intentional and malicious and done for the sole purpose of causing Plaintiff to suffer humiliation, mental anguish and emotional and physical distress.

50. The plaintiff's vehicle is still in its damaged state, and the plaintiff has had to hire attorneys to pursue the claim on his behalf. That even after reaching an agreement regarding the true value of the claim, the defendant refused to honor its obligation and make the full settlement as agreed.

51. As a further proximate result of defendant's actions and the consequences proximately caused by it, as hereinabove alleged, plaintiff suffered severe humiliation, mental anguish, and emotional distress, and has been injured in mind and body as follows: damages in the sum to be determined at trial based on proof.

## THIRD CLAIM FOR RELIEF

## Fraudulent Misrepresentation

52. Plaintiff re-alleges and incorporates by reference the allegations contained in the entirety of this Complaint as if fully set forth herein.

53. The defendants fraudulently represented to the defendant that they were going to settle his claims provided he complied with their terms of premium payment.

54. It is not in dispute that as at the time of the accident, the plaintiff was insured by the defendant.

55. The plaintiff reasonably expected that once a claim has been made and the same verified, the defendant was bound to promptly settle the same as they had represented to him.

56. The representation of prompt and efficient settlement of claims as the plaintiff had legitimately expected were not met.

57. The defendants misrepresented to the plaintiff that he had to avail himself only to be realized that he had to avail himself to be induced to buy time shares and other products.

**58.** As a result of the fraudulent misrepresentation, the plaintiff has lost all the premiums he paid at Allstate with the hope of being shielded from any form of loss regarding his motor vehicle.

## FOURTH CLAIM FOR RELIEF

### Breach of Contract & Consumer Injury

59. Plaintiff re-alleges and incorporates by reference the allegations contained in the entirety of this Complaint as if fully set forth herein.

60. Plaintiff entered into an insurance contract with the defendant, executed policy documents, and paid money to the defendant with the hope and expectation of being accorded efficient and timeous settlement of claim in case he had a claim regarding his motor vehicle.

61. The plaintiff was involved in an accident for which there was a legitimate expectation that the defendant was to honor its policy and settle the claim timeously.

62. The defendant failed to settle the entire claim two years down the line and all that the plaintiff has received is part settlement cheque that he has not banked as it does not cover all the expenses already incurred.

63. The failure to settle the claim on time is deliberate and constitute a breach of the underlying contractual obligations as outlined in the policy documents.

64. Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the Code of Insurance, as it is not the first time the defendant is brought to court for failure to settle a claim wholly and on time. In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

65. The plaintiff was harmed and continues to suffer as a result of the defendant's failure to honor the claim.

## FIFTH CLAIM FOR RELIEF

### Bad Faith Insurance

66. Plaintiff re-alleges and incorporates by reference the allegations contained in the entirety of this Complaint as if fully set forth herein.

67. Through its conducts, the defendant has failed to fully settle a valid insurance claim as was lodged by the plaintiff herein.

68. Through its conducts and pretenses, the defendant has denied the claim without furnishing a valid reason

69. The defendant has offered and continued to offer money that is less than what the claim is worth (see the cheque of $10,810.46 instead of the $12750 as assessed, without considering the legal and other expenses). The defendant also offered a paltry $9000 for a vehicle they truly knew was far much more than what they were offering for it.

70. It is now almost two years since when the claim was filed.  It is apparent that the delay in settlement is intentional and in bad faith.

71. The defendant has also failed in its conduct to promptly communicate with the plaintiff regarding the claim.

72. The defendant continued to issue threats at one point threatening to bookshelf the plaintiff's demand for settlement if he failed to accept their offer which was below the value of the damage.

73. Evidently, the Defendant denied Plaintiff's claims in bad faith by, among other conduct, (a) failing or refusing to perform a fair, objective, and thorough investigation of the claim as required by the Montana Insurance Code; (b) delaying resolution of Plaintiff's claims; (c) placing unduly restrictive interpretations on the policy terms for the purpose of denying coverage due under the policy; (d) failing to communicate promptly with the plaintiff regarding the

progress of the settlement; and (e) forcing Plaintiff to institute litigation to recover amounts due under the policy.

74. Based on the above, Plaintiff allege that the defendant has committed institutional bad faith that is part of a repeated pattern of unfair practices and not an isolated occurrence. The pattern of unfair practices constitutes a conscious course of wrongful conduct that is firmly grounded in defendant's established company policy.

75. As a proximate result of the aforementioned bad faith conduct by the defendant, Plaintiff has suffered and will continue to suffer damages. These damages include interest on the withheld and unreasonably delayed payments due under the policy and other special economic and consequential damages, of a total amount to be shown at trial.

76. As a further proximate result of defendant's bad faith conduct, Plaintiff was compelled to retain legal counsel to obtain the benefits due under his Insurance Policy. The defendant is therefore liable to Plaintiff for those attorneys' fees, witness fees, and costs of litigation reasonably necessary and incurred by Plaintiff to obtain the benefits of the Policy.

77. Allstate carried out its bad faith conduct with a willful and conscious disregard of Plaintiff's rights or subjected Plaintiff to cruel and unjust hardship in conscious

disregard of his rights. Alternatively, Allstate's conduct constituted an intentional misrepresentation, deceit, or concealment of a material fact known to Defendant with the intention of depriving Plaintiff of legal rights, or of causing Plaintiff other injury. Defendant's conduct constitutes malice, oppression, or fraud under Montana Civil Code section 28-2-406, entitling Plaintiff to punitive damages in an amount appropriate to punish or set an example of Allstate and to deter future similar conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, respectfully requests that the Court enter judgment in his favor and against Allstate, as follows:

1.  That the Court award Plaintiff all statutory damages, including, but not limited to, compensatory, consequential, and general damages in an amount to be determined at trial.

2.  That the Court award statutory damages, trebled, and punitive or exemplary damages, to the extent permitted by law.

3.  That the Court award Plaintiff all costs and expenses of the action, including reasonable attorneys' fees;

4.  That the Court award pre- and post-judgment interest at the maximum legal rate;

5. That the Court grant all such equitable relief as it deems proper and just, including, but not limited to, disgorgement and restitution; and

6. That the Court grant all such other relief as it deems just and proper

**DATED**: …………………………..

Benjamin White Warren

._____

Pro Per Plaintiff

BENJAMIN WHITE WARREN
12555 Andrew Lane
Molt, MT 59057
Email: bwarren@dmcre.com
Tel: +1858-442-3866

Pro Se Plaintiff

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MONTANA YELLOWSTONE COUNTY**

| | | |
|---|---|---|
| BENJAMIN WHITE WARREN, an individual, | ) | VERIFIED COMPLAINT |
| | ) | |
| Plaintiff, | ) | No. |
| | ) | |
| v. | ) | |
| | ) | |
| ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, | ) | |
| | ) | |
| | | DEMAND FOR JURY |
| Defendant. | ) | TRIAL |

**VERIFICATION**

I, BENJAMIN WHITE WARREN under penalties provided by law pursuant to the Code of Civil Procedure, hereby certify that I have read the foregoing Verified Complaint; that the factual statements set forth in this Verified Complaint are true and correct, except for those alleged on information and belief; and that I am informed and I believe that the facts alleged on information and belief are also true.

**DATED**: …………………………..


                                        BENJAMIN WHITE WARREN

                                        ._____

                                                        Pro Per Plaintiff

**CERTIFICATE OF SERVICE**

The undersigned certifies that the following parties to this action have been served with the foregoing document by depositing a copy in the United States Mail, postage prepaid, addressed as follows:

Allstate Insurance Co.
P.O. Box 660636
Dallas,
TX 75266
**DATED**: ………………………….

BENJAMIN WHITE WARREN

._____

Pro Per Plaintiff

EXHIBITS